IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

DEC 1 0 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

ROSA M. FLORES,               §
    Plaintiff,                §
                       §
VS.                          §
                       §    CIVIL ACTION NO. B-02-146
JAMES W. ZIGLER, COMMISSIONER   §
FOR THE IMMIGRATION AND         §
NATURALIZATION SERVICE,         §
    Defendants.              §

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the Court is a Motion to Dismiss and in the Alternative Motion for Summary Judgment (Docket No. 13) filed by Defendant, James W. Zigler, Commissioner for the Immigration and Naturalization Service ("Commissioner"). For the reasons stated below it is recommended that the Motion to Dismiss be granted in part and denied in part and the Motion for Summary Judgment be denied.

## I. Background

Plaintiff, Rosa M. Flores ("Flores"), filed a complaint (Docket No. 1) alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, on the basis of sex/gender as set forth in 42 U.S.C. § 2000e-2(a). Flores also alleged state law causes of action including assault and battery, fraud, intentional infliction of emotional distress, invasion of privacy, negligence, and retaliation. Flores later filed a First Amended Original Complaint (Docket No. 30) omitting the state law claims and only raising Title VII claims.

Upon completing training at the Border Patrol Academy, Flores began her duty as a Border Patrol Agent on July 16, 2000, and was assigned to the Weslaco station on December 4, 2000. On Flores' tenth day of work, she reported to SBPA Louck, her supervisor, that BPA

Cervantes refused to work with her that evening and said, "I will not ride with an EEOC liability for 8-10 hours."[1]  In response, Louck re-assigned Flores to work with BPA Moreno and commented, "Don't worry Rosa, it is only going to get better".[2]  About three or four weeks after she began her duty at the Weslaco station, San Juanita Luna, Assistant Patrol Agent in Charge at the Weslaco Station ("APAIC Luna") learned that Flores wanted to resign.  At that time, APAIC Luna spoke with Flores about her reasons for wanting to resign.  APAIC Luna stated in her memorandum to Chief Patrol Agent Jose Garza, ("CPA Garza"), of the McAllen Sector, that Flores wanted to resign because she felt that "she was not able to do the job" and "that being at the Academy was not anything like being out in the field".[3]

During the third week of December, Flores met with BPA Egerton, her post academy instructor and supervisor, and explained the events that had taken place at the Weslaco station.  BPA Egerton responded by stating, "In time, it will get better."[4]  About this time, Flores also told her husband, Luis Flores, a Border Patrol Agent at the Harlingen station, about the discriminatory comments and requested that he speak to his supervisors.  Luis Flores spoke with supervisors Zamora, Torres, and Gonzalez who told him that Flores needed to, "suck it up" and that, "that is the way the Border Patrol treats female agents."[5]

On the last day of Flores' employment at the Weslaco station, APAIC Luna met with

---

[1]Docket No. 30, Plaintiff's First Amended Original Complaint, Page 5, ¶ 10.

[2]Docket No. 30, Plaintiff's First Amended Original Complaint, Page 5, ¶ 10.

[3]Docket No. 13, Defendant's Motion to Dismiss, Government's Exhibit A-3, Page 1.

[4]Docket No. 30, Plaintiff's First Amended Original Complaint, Page 5, ¶11.

[5]Docket No. 30, Plaintiff's First Amended Original Complaint, Page 5, ¶ 9.

Flores a second time. APAIC Luna again asked Flores the reasons for her resignation. On that occasion, Flores mentioned two incidents with Border Patrol Agents Cristela Vasquez and Paul Reece. Flores stated that BPA Vasquez only half heartedly offered to shake Flores' hand and that BPA Reece commented, "Isn't it a shame that the Service spends thousands of dollars to get someone through the academy and someone just quits."[6]

Flores resigned from her position as a Border Patrol Agent at the Weslaco station on February 2, 2001, and began to work as a Border Patrol Assistant at the Harlingen station on February 5, 2001. At that time, Flores complained to John C. Brinning, the Patrol Agent in Charge of the Harlingen station, about various incidents of harassment while in Weslaco. On February 8, 2001, Flores prepared a memo to CPA Garza which explained her reasons for resigning, described the discrimination that she underwent at the Weslaco station, and requested reinstatement as a Border Patrol Agent at the Harlingen Station. Flores stated that she was "exposed to some very demeaning comments made by my fellow co-workers", such as, "I am not riding with an EEOC liability".[7] Flores believed that these comments stemmed from an incident at the Border Patrol Academy in which another female agent had reported harassment by an instructor and Flores was questioned about it. Flores also stated in the memo that she did not report the harassment at the Weslaco station because she feared the consequences.

On February 14, 2001, APAIC Luna met with Flores for a third time as part of an official Management Inquiry and discussed the allegations Flores made in her memo dated February 8, 2001. Flores recalled that several agents had attacked her verbally with comments like, "if you

---

[6]Docket No. 13, Defendant's Motion to Dismiss, Government's Exhibit A-3, Page 2.

[7]Docket No. 13, Government's Exhibit A-1, Page 1.

were the female who filed an EEO we don't like people like that here" and "nobody likes a female that files".[8]

Sometime in June of 2001, Flores filed an informal complaint with the Equal Employment Opportunity Commission (EEOC) and later attended a mediation session in an attempt to resolve the complaint. On August 12, 2001, Flores filed a formal EEOC complaint. It appears from the record that no action was taken by the EEOC and a right-to-sue letter was never issued. There is no explanation for this. The Commissioner acknowledges that for reasons unknown, no action was taken on Flores' formal complaint.[9]

Flores' filed this case on July 29, 2002, pursuant to Title VII of the 1964 Civil Rights Act, as amended, codified under 42 U.S.C. § 2000e-2(a), for employment discrimination based on her gender. She alleges that she has been the target of sexual harassment, a hostile work environment and retaliation.

The Commissioner argues that Flores has failed to present facts, in her Original Complaint, which make a prima facie showing of discrimination under Title VII. Flores contends that she has presented facts constituting sex based discrimination, as set forth in detail in her First Amended Original Complaint.

## II. Standard of Review

### A. Dismissal Under Fed. R. Civ. P. 12(b)(6)

Motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) are viewed with

in favor and are rarely granted. *Southern Christian Leadership Conference v. Supreme Court of*

*the State of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Tanglewood East Homowners v. Charles-Thomas, Inc.*, 849 f.2d 1568, 1572 (5th Cir. 1988)). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the statement of the claim for relief, not the facts that support it. *See Nevarez v. United States*, 957 F.Supp. 884, 889 (W.D. Tex. 1997). When ruling on a Rule 12(b)(6) motion, this Court must liberally construe the complaint in favor of the plaintiff and assume the truth of all well-pleaded facts. *See Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002). The court may not dismiss a plaintiff's action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Southern Christian Leadership Conference*, 252 F.3d at 786 (quoting *Conley v. Gibson*, 355 U.S. 41 (1957). A plaintiff's conclusory allegations or legal conclusions masquerading as factual assertions are insufficient to defeat a motion to dismiss. *See id.*

## B. Summary Judgment

Summary judgment evidence is viewed in the light most favorable to the non-movant. *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 456-58 (1992). Summary judgment is proper only when it appears that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An alleged factual dispute will not defeat a motion unless it is genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "material" if it involves a fact that might affect the outcome of the suit under governing law. *Douglass v. United Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). Once the movant establishes the absence of a factual dispute, the burden shifts to the non-movant to show that summary judgment is inappropriate.

The nonmoving party may not rest upon the mere allegations or denials of its pleadings.

5

*Anderson*, 477 U.S. at 256. Instead, the non-movant must "make a showing sufficient to establish the existence of each essential element of its case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This evidence must do more than create a metaphysical doubt. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Anderson*, 477 U.S. at 256.

## III. Procedural Requirements and Timeliness of Claims

### A. Informal Counseling

Federal employees must seek informal counseling within forty-five days of the date of the matter alleged to be discriminatory, before they file an EEOC complaint. 29 C.F.R. 1614.105(a)(1). *Teemac v. Henderson*, 298 F.3d 452, 454 (5th Cir. 2002). If the employee fails to do so, his claim is barred, unless he can establish waiver, estoppel, or equitable tolling. *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992).

In this case, Flores alleges that she suffered on-going discrimination in the form of sexual harassment throughout her tenure as a Border Patrol Agent at the Weslaco station, which ended on February 2, 2001, when she resigned. Flores filed an informal complaint with the EEOC and sought counseling sometime in June of 2001, well outside the forty-five day requirement. As such, Flores' claim should have been time barred. However, for reasons unknown to this court, Flores was allowed to file a formal complaint with the EEOC on August 13, 2001.

### B. Formal Charges Filed with EEOC

Under Title VII, a plaintiff may file an employment discrimination charge with the EEOC either one hundred and eighty or three hundred days after an alleged unlawful employment

6

practice occurred.  42 U.S.C. 2000e-5(e)(1).[10]  Flores claims do not fall under the exception

which would implicate the three hundred day period.  Courts have utilized the theory of a

continuing violation in certain exceptional circumstances when applying the limitations period

contained in § 2000e-5(e)(1).  This equitable exception arises "where the unlawful employment

practice manifests itself over time, rather than as a series of discrete acts." *Waltman v.*

*International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989) (quoting *Abrams v. Baylor College of*

*Medicine*, 805 F.2d 528, 532 (5th Cir.1986)).  To sustain a claim under the continuing violation

exception, an employee must show that at least one incident of harassment occurred within the

limitations period.  *Williams v. E.I. Du Pont de Nemours*, 955 F.Supp. 711, 720 (S.D. Tex.

1996).

       In this case, Flores does not specify the date of the last incident of harassment.  If it is assumed

that the last incident occurred on the day that she resigned, February 2, 2001, then her formal complaint

filed on August 13, 2001, was beyond the one hundred and eighty day period allowed by the regulations.

Since there is no information in the record regarding the disposition of Flores' complaint by the EEOC,

it cannot be determined whether it was found to be time barred.  At least one district court has held that

dismissal of the case is warranted where the plaintiff failed to timely file the discrimination charge with

the EEOC, failing to satisfy all administrative prerequisites to filing a complaint in federal court.  *See*

*Ellis v. Wal-Mart Stores, Inc.*, 952 F.Supp. 1513, 1519 (M.D. Ala. 1996).

---

[10]"A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier..."

7

## C. Civil Action and Exhaustion of Administrative Remedies

Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court.  Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue.  Filing the EEOC charge is not a jurisdictional prerequisite, but is a pre-condition to filing suit in district court and therefore is subject to waiver, estoppel, and equitable tolling.  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).  Claimants have ninety days to file a civil action after receipt of such a notice from the EEOC.  *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th Cir.1982). The requirement to file a lawsuit within the ninety day limitation period is strictly construed. *Ringgold v. National Maintenance Corp.*, 796 F.2d 769, 770 (5th Cir. 1986).

Presumption of receipt is appropriate in determining whether a Title VII complaint was filed within ninety days of the receipt of the right to sue letter.  When the date on which a right to sue letter was actually received is either unknown or disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed.  The Fifth Circuit in *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) applied the seven day presumption of receipt period and noted, "As this is a matter of first impression in this circuit, we look to other federal courts for guidance." *See Lozano v. Ashcroft*, 258 F.3d 1160, 1164 (10th Cir.2001); *see also Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (presuming the plaintiff received a right-to-sue letter three days after delivery based upon Fed. R. Civ. P. 6(e)); *Banks v. Rockwell Intern. N. Am. Aircraft Operations*, 855 F.2d 324, 326 (6th Cir.1988) (applying a five-day presumption of receipt of a right-to-sue letter).  However, the Fifth Circuit has not addressed the specific issue of

8

presumption of receipt in cases in which the EEOC never issued the right to sue letter.

In this case, it appears that no action was taken regarding Flores's formal complaint and no right to sue letter was issued. Flores filed her formal complaint August 13, 2001, but did not file the instant action in federal court until almost one year later on July 29, 2002. The doctrine of equitable tolling may be applied to toll ninety day period for filing suit under Title VII. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149-52, 104 S.Ct. 1723, 1723-26, 80 L.Ed.2d 196 (1984). The Supreme Court in the above case identified circumstances under which equitable tolling should be recognized, such as, "where a claimant has received inadequate notice; where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon; where the court has led the plaintiff to believe that she had done everything required of her.... [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction."

The Fifth Circuit in *Chappell v. Emco Machine Works Co.*, 601 F.2d 1295, 1302-03 (5th Cir.1979), discussed other possible bases for tolling: (1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's unawareness of facts giving rise to a claim because the defendant had intentionally concealed their existence; and (3) the EEOC's misleading the plaintiff about the nature of her rights.

There is no explanation in the record as to the EEOC's failure to issue a right to sue letter to Flores. No notice is tantamount to inadequate notice. The ninety day limitation period should be tolled in this case.

**IV. Prima Facie Showing of Discrimination Under Title VII**

Flores seeks redress under 42 U.S.C. § 2000e-2(a) which prohibits employers from

discriminating on the basis of race, color, religion, sex, or national origin. However, as Flores'
employer was the United States Border Patrol, an agency of the federal government, the
applicable statutory provision is 42 U.S.C. § 2000e-16, which prohibits discriminatory
employment practices by certain federal government entities.

### A. Sex Based Discrimination

Incidents of harassment can rise to the level of sex based discrimination under Title VII in
two instances. One is commonly described as *quid pro quo* harassment, which is not at issue in
this case. The other is referred to as *hostile work environment*, in which the work environment
must be permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe
or pervasive so as to alter the conditions of employment and create an abusive working
environment.

In either scenario, the plaintiff in any Title VII sexual harassment case must, as an initial
matter, establish that: (1) she belongs to a protected class, (2) she was subjected to unwelcome
sexual harassment, and (3) the harassment was based on sex. *Watts v. Kroger Co.*, 170 F.3d
505, 509 (5th Cir. 1999). It is important to note that, the question of whether a given instance of
harassment constitutes sex-based discrimination is entirely separate from the inquiry into whether
the harasser's conduct was serious enough to constitute either quid pro quo or hostile
environment harassment. *Ackel v. National Communications, Inc.*, 339 F.3d 376, 382 (5th Cir.
2003).

In this case, Flores' factual allegations, contained in the pleadings, support a sex based
discrimination claim under Title VII and survive dismissal under FED. R. CIV. P. 12(b)(6). Flores
has shown that as a female, she belongs to a protected class and she claims to have been

subjected to unwelcome sexual harassment in the form of derogatory and uninvited comments and discriminatory actions by other agents. The claimed harassment was clearly based on her status as a female.

Flores' sex based discrimination claim also survives the summary judgment motion made by the Commissioner. The factual allegations set forth in the pleadings and Flores' affidavit establish the existence of each essential element of Flores' case and the Commissioner is not entitled to judgment as a matter of law on this claim.

### B. Hostile Work Environment

In order to present a claim alleging a hostile work environment under Title VII, the plaintiff must show, in addition to the three elements of sex based discrimination, that (1) the harassment affected a term, condition, or privilege of employment, i.e., the sexual harassment must be sufficiently severe as to alter the conditions of employment and create an abusive working environment; and (2) respondeat superior, i.e, the employer knew or should have known of the harassment and failed to take remedial action. *Waltman v. International Paper Co.* 875 F.2d 468, 477 (5th Cir. 1989).

### (1) Term, Condition, or Privilege of Employment

In order for a hostile work environment claim to be actionable under Title VII, the sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474, 482 (5th Cir. 2002). Whether an environment meets this standard depends on all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

11

Case 1:02-cv-00146    Document 38    Filed in TXSD on 12/09/2003    Page 12 of 19

offensive utterance; and whether it is unreasonable interferes with an employee's work performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L.Ed.2d. 662 (1998).

An employee may also prove that the objectionable conduct affected a term, condition or privilege of employment by showing that he or she was "constructively discharged". *Woods v. Delta*, 274 F.3d 295, 301 (5th Cir. 2001). To prove a constructive discharge, the plaintiff must show that a reasonable person in [her] shoes would have felt compelled to resign. *Faruki v. Parsons, S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997). In a constructive discharge scenario, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment claim. *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir.1998).

In this case, Flores had only been on the job at the Weslaco station two months, during which time she claims to have been the target of numerous direct and indirect offensive comments and physical isolation. The comments allegedly made by BPA's Reece, Joffrey, Cervantes, Zamora, and Gonzalez were directed at Flores' status as a female as it related to her inability to perform her job and as an potential "EEOC liability". According to Flores, these comments were made almost daily out loud and in front of other agents and supervisors at muster before Flores' duty began. At the very least these comments were humiliating. Flores had undergone the same training as the male agents and graduated from the Border Patrol Academy, only to be ridiculed in front of her peers. The daily barrage of discriminating remarks and refusal to work with Flores most certainly could have interfered with Flores' job performance. A reasonable woman could have perceived the constant and egregious comments to be hostile or

abusive, and perceived to be so by Flores.

As to the issue of constructive discharge, Flores was repeatedly reminded by her male counterparts that they did not like agents who made complaints and that they would " take care of it in the field".[11]   Flores interpreted these comments as threats and feared for her physical safety. This harassment was of sufficiently greater severity than the other gender based derogatory comments.  After relaying the discriminatory conduct to supervisors Louck and Egerton without any results, Flores felt she had no other options.  A reasonable woman experiencing the type of harassment complained of by Flores would have felt compelled to resign.

### (2) Employer Knowledge and Remedial Action

An employer must take prompt and appropriate remedial action, "reasonably calculated" to end the harassment.  *Jones v. Flagship Intern.*, 793 F.2d 714, 719-720 (5th Cir. 1986).  On at least one occasion, Flores' supervisor was made aware of the treatment she was subjected to. Flores reported to SBPA Louck, her supervisor, that BPA Cervantes refused to work with her one evening and Louck responded by acknowledging the incident, relaying his sympathies,[12] and then re-assigning Flores to work with BPA Moreno instead.  However, there is no indication that Louck addressed the discriminatory treatment with Cervantes or took any other measures to prohibit the on-going harassment.

Flores also spoke with BPA Egerton, her post academy instructor and supervisor, regarding the conduct of her male co-workers.  Egerton responded by explaining to Flores that,

---

[11]Docket No. 30, Plaintiff's First Amended Original Complaint, Page 3, ¶¶ 6 and 7.

[12]"Don't worry Rosa, it is only going to get better." Docket No. 30, Plaintiff's First Amended Original Complaint, Page 5, ¶ 10.

"In time, it will get better",[13] but failed to report the conduct to upper management or take other corrective action. These two instances show that Flores' superiors had actual knowledge of the conduct. Even if Flores had not reported the incidents herself, it appears from BPA Louck and Egerton's comments that they may have had constructive knowledge of this type of behavior.

### (3) Vicarious Liability

In hostile work environment claims, where the alleged discriminatory actions are conducted by an employer's subordinates, the Supreme Court has addressed the applicable standard for imposing vicarious liability on the employer. Even if the plaintiff's allegations are true, an employer may still escape liability if the defendant (1) exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) plaintiff unreasonably failed to to take advantage of any preventative or corrective opportunities provided by the defendant or to avoid harm otherwise. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275 (1998). The Court noted that proof as to the second element is not limited to showing that the employee failed to use the employer's formal complaint procedures. However, demonstrating such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

In this case, the Commissioner argues that he is entitled to summary judgment on the hostile work environment claim because he exercised reasonable care to prevent and correct the behavior as a Management Inquiry was swiftly made into Flores' complaints. In addition, co-workers were interviewed, changes were made and future training was planned. Flores was even offered her position back as an agent at the Weslaco station. The Commissioner also contends

---

[13]Docket No. 30, Plaintiff's First Amended Original Complaint, Page 5, ¶ 11.

that Flores failed to take advantage of the corrective opportunities by not making any formal complaints during her time as an agent. Specifically, when questioned by APAIC Luna about her reasons for wanting to resign, Flores gave alternative reasons not associated with the alleged discrimination.

It appears from the information contained in the pleadings that APAIC Luna made an informal inquiry and spoke with Flores about after three or four weeks of beginning her employment at the Weslaco station. However, an official management inquiry was not made until February 14, 2001, approximately two weeks after Flores had already resigned (February 2, 2001). APAIC Luna did not interview the other agents until sometime in March.[14]  APAIC Luna's February 16th memo to CPA Garza states that there was a training module being prepared regarding EEO and that it would be available March 6, 2001.

As for the issue of Flores' failure to make a formal EEOC complaint during her tenure, she did informally make the discriminatory conduct aware to supervisors Louck and Egerton. Flores also stated that she did not file a formal EEOC complaint during her time as an agent because she was afraid of the possible reactions by her fellow male agents. Flores' fear stemmed from the agents repeated comments to her regarding their dislike of female agents who make complaints and their inclination to take care of it "in the field".

The Commissioner is not entitled to summary judgment on his defense as he failed to take reasonable care to prevent and correct the harassing behavior. The steps taken by APAIC Luna were too little too late and there was a complete failure to act by supervisors Louck and

---

[14]On March 6, 2001, APAIC Luna spoke with BPA Reece. On March 7, 2001, APAIC Luna spoke with BPA Hunter and BPA Gonzalez. On March 23, 2001, APAIC Luna spoke with BPA's Zamora, Flores, and Scanlon. (Docket No. 13, Government's Exhibit A-3, Page 8-12).

15

Egerton. Although Flores did not make a formal complaint during her time as an agent, she had good reason. Not only did she take seriously the threats made by the other agents, but her informal complaint to her supervisors went completely unheeded.

**(4) Summary of Hostile Work Environment Claim**

As for Flores' claim of a hostile work environment, Flores has presented facts in her complaint which show that the discrimination affected a term of her employment and that her supervisors knew or should have known of the harassment and failed to take remedial action. For the purposes of a 12(b)(6) motion, the Court, accepts as true Flores' well plead facts which show that she subjected to a sexually objectionable environment and thus her claim of a hostile work environment should not be dismissed.

Nor is the Commissioner entitled to summary judgment on Flores' hostile work environment claim. Flores has presented facts, as contained in the pleadings and her affidavit which make out a prima facie case and at least raise a genuine issue of material fact with respect to certain elements of a hostile work environment cause of action.

**C. Retaliation**

A Title VII plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474, 483 (5th Cir. 2002).

A "protected activity" for purposes of showing a Title VII retaliation claim, is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. *Ackel v.*

16

*National Communications, Inc.*, 339 F.3d 376, 384 (5th Cir. 2003).

In satisfying the "adverse employment action" element of prima facie retaliation case under Title VII, only ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating meet this requirement. *Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002).

A "causal link" is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). At the prima facie stage, the standard for satisfying the causation element is much less stringent than a "but for" causation standard. *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 191 (5th Cir. 2001). A plaintiff alleging Title VII retaliation may establish her case for causation in one of two ways. She may either present "direct evidence" of retaliation, which is also known as "mixed-motive" method of proving retaliatory motivation, or she may provide "circumstantial evidence" creating a rebuttable presumption of retaliation. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003).

In this case, Flores did not engage in a protected activity at the time of her employment as an agent, nor did she suffer an adverse employment action. Flores did not make a formal complaint until after she had resigned from her position as an agent at the Weslaco station. Flores did speak with APAIC Luna prior to her resignation, but stated that her reasons for resigning were because that she felt that "she was not able to do the job" and "that being at the Academy was not anything like being out in the field". (Docket No. 13, Government's Exhibit A-3, p.1). Flores did not make a formal charge, testify, assist, or participate in any investigation,

17

proceeding, or hearing under Title VII during her employment as an agent.  As such, she did not

engage in a "protected activity" as required to state a claim for retaliation.  In addition, Flores

herself decided to resign which precluded any "adverse employment action" by her employer, as

is required to make a retaliation claim.  In fact, CPA Garza extended an offer to Flores to

reinstate her as an agent at the Weslaco station, which Flores ultimately declined.  Flores can

prove no set of facts in support of her claim which would entitle her to relief.  Flores did not

engage in a protected activity, nor was there a resulting adverse employment action, not to

mention the lack of a causal connection between the two.  Flores' retaliation claim should be

dismissed.

## V. Recommendation

Flores has presented a prima facie case of sex based discrimination and hostile work

environment under Title VII, but has failed to allege facts in support of her retaliation claim that

would entitle her to relief.

**IT IS RECOMMENDED** that,

1)  Defendant's Motion to Dismiss be **DENIED** as to Flores' **TITLE VII SEX BASED**

**DISCRIMINATION** claim and **HOSTILE WORK ENVIRONMENT** claim.

2) Defendant's Motion to Dismiss be **GRANTED** as to Flores' **RETALIATION** claim.

3) Defendant's Motion for Summary Judgment be **DENIED**.


A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within 10 days after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 9th day of December, 2003.

John Wm. Black
United States Magistrate Judge

19